**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RUTH E. IVANESCU and
CHLOE IVANESCU,

Plaintiffs,

v. Case No. ____________________

ARKADIOS WEALTH ADVISORS LLC,
a Georgia limited liability company,

Defendant.
______________________________________/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs RUTH E. IVANESCU ("Ruth") and CHLOE IVANESCU ("Chloe") (together, "Plaintiffs"), by and through undersigned counsel, sue Defendant ARKADIOS WEALTH ADVISORS LLC ("Arkadios Wealth"), and allege:

## I. NATURE OF THE ACTION

1. In September 2021, Arkadios Wealth registered Gustavo C. Sanchez Nazario ("Sanchez"), Central Registration Depository ("CRD") No. 5946258, as an investment adviser representative. Sixteen months earlier, Raymond James & Associates, Inc. ("Raymond James") had discharged Sanchez for attempting to effect the acceptance of a gift of a client's securities without firm approval and for violating its selling-away and private-securities-transaction policies. At the moment Arkadios

Wealth registered him, Sanchez was the subject of an open Florida enforcement proceeding for rendering investment advice from Florida without registration and had previously been the subject of a customer arbitration alleging over-concentration and unsuitable hold recommendations. All of it was reported through the CRD system and publicly available on BrokerCheck.

2. Arkadios Wealth did not merely have constructive notice of the Florida proceeding. It had actual knowledge because its own application for Sanchez's Florida registration was pending before the Office of Financial Regulation while that proceeding was open. The Stipulation and Consent Agreement adopted by the Office's Final Order of March 30, 2022 recites: "The Office agrees to approve the pending applications for Nazario's registration with the Office as an associated person of Arkadios Wealth Advisors and as an associated person of Arkadios Capital, LLC."

3. Arkadios Wealth registered Sanchez anyway, took discretionary control of Plaintiffs' life savings, and then supervised nothing. Within six months of taking that role, Arkadios Wealth's own portfolio reports recorded a single pre-revenue micro-capitalization security at 52.79% of one of Plaintiffs' accounts, recorded the account's allocation to "Small Growth" at 48.00% against Arkadios Wealth's own recommended allocation of 3.00% for that asset class, and separately removed that same security from the firm's sector analysis as an "excluded holding."

Arkadios Wealth generated those documents, transmitted them to Chloe, and did nothing. The position went to zero.

4. Arkadios Wealth then permitted Sanchez, in August 2023, to liquidate roughly $774,000 of Ruth's appreciated equity holdings and to sell municipal bonds purchased weeks earlier at disclosed markups in order to fund a $2,500,000 fixed indexed annuity sold to a sixty-nine-year-old widow on a misrepresentation about his own compensation. Arkadios Wealth severed its relationship with Sanchez in April 2024 — two years after the Florida Final Order, four years after the Raymond James discharge, and, in Sanchez's own words, "in anticipation of a lawsuit that could name me."

5. Plaintiffs seek no recovery from Arkadios Wealth for any loss sustained before September 2021. The events of 2018 through early 2021 are pleaded only as facts known or available to Arkadios Wealth when it registered Sanchez and when it accepted the advisory role.

## II. PARTIES

6. Plaintiff Ruth E. Ivanescu is a natural person, sui juris, domiciled in Orange County, Florida, and a citizen of the State of Florida. She is the widow of Cristian Ivanescu. She did not work outside the home apart from an occasional catering business, has no financial or investment background, and relied upon her husband for financial guidance until his death on December 31, 2017. She was sixty-

eight years old when Arkadios Wealth assumed management of her account and sixty-nine when the annuity described below was sold to her.

7. Plaintiff Chloe Ivanescu is a natural person, sui juris, domiciled in Orange County, Florida, and a citizen of the State of Florida. She is the only child of Ruth and Cristian Ivanescu. Her work experience is in marketing. She has no financial or investment background.

8. Defendant Arkadios Wealth Advisors LLC is a limited liability company organized under the laws of the State of Georgia, with its principal office and place of business at 2827 Peachtree Road NE, Suite 510, Atlanta, Georgia 30305. It is registered with the Securities and Exchange Commission as an investment adviser, CRD No. 288863, SEC File No. 801-110833. It maintains branch offices registered in the State of Florida, including at 621 NW 53rd Street, Suite 125, Boca Raton, Florida (CRD Branch No. 759524) and at 10739 Deerwood Park Boulevard, Suite 105, Jacksonville, Florida (CRD Branch No. 688382), and reports 104 offices other than its principal office.

9. At all material times Sanchez and Luis De Jesús-Aponte ("De Jesús") were registered to and associated with Arkadios Wealth as investment adviser representatives, acted within the actual or apparent scope of that agency and in the conduct of Arkadios Wealth's business, and were held out by Arkadios Wealth to

Plaintiffs as its representatives. Their acts and omissions alleged in this Complaint are Arkadios Wealth's acts and omissions.

## III. JURISDICTION AND VENUE

### A. Diversity Jurisdiction

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs.

11. Plaintiffs are citizens of the State of Florida.

12. A limited liability company is a citizen of every State of which any of its members is a citizen. Arkadios Wealth's members, and their citizenship, are alleged as follows on the basis of Arkadios Wealth's own Form ADV filed with the Securities and Exchange Commission on June 9, 2026, a copy of the relevant portions of which is attached as Exhibit A:

(a) Schedule A of that Form ADV identifies David Yancey Millican (CRD No. 2788060) as Arkadios Wealth's Managing Member and Chief Executive Officer since June 2017, and as a control person. Upon information and belief, Mr. Millican is domiciled in, and is a citizen of, the State of Georgia.

(b) Schedule A of that Form ADV identifies Arkadios Holdings, a domestic entity, as an owner of Arkadios Wealth since June 2017, reporting ownership code "E" — seventy-five percent or

more — and as a control person. Upon information and belief, Arkadios Holdings is organized under the laws of the State of Georgia and maintains its principal place of business in Atlanta, Georgia. Arkadios Capital, LLC's Form BD identifies that entity as Arkadios Holdings, Inc., a corporation. As a corporation, it is a citizen of every State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Upon information and belief, Arkadios Holdings, Inc. is incorporated under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

(c) Schedule B of that Form ADV identifies David Yancey Millican as the owner of seventy-five percent or more of Arkadios Holdings, and as a control person of it.

(d) Schedule A of Form ADV requires the disclosure only of those members of a limited liability company that have the right to receive upon dissolution, or that have contributed, five percent or more of the company's capital, together with its elected managers. The identity of any member holding less than five percent is therefore within Arkadios Wealth's exclusive knowledge. Upon information and belief, and after the inquiry

reasonable under the circumstances, no member of Arkadios Wealth is a citizen of the State of Florida. Plaintiffs will seek leave to amend promptly if jurisdictional discovery discloses otherwise.

13. Accordingly, Arkadios Wealth is a citizen of the State of Georgia and of no other State, and complete diversity exists.

14. The amount in controversy greatly exceeds $75,000. Plaintiffs' compensatory damages are not less than ten million dollars ($10,000,000.00), as set out in Part IV.L below.

**B. Federal Question and Supplemental Jurisdiction**

15. This Court independently has subject matter jurisdiction under 28 U.S.C. § 1331 and section 214 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-14, over Count IX, which seeks rescission and restitution under section 215(b) of that Act, 15 U.S.C. § 80b-15(b). See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979). This Court has supplemental jurisdiction over the remaining counts under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

**C. Personal Jurisdiction**

16. This Court has personal jurisdiction over Arkadios Wealth under section 48.193(1)(a)(1) and (1)(a)(2), Florida Statutes, and consistent with due

process, in that Arkadios Wealth operates, conducts, engages in and carries on a business in Florida through registered branch offices in this State; solicited and contracted with a Florida resident to manage a Florida-situated account; registered and held out Florida-based associated persons; rendered investment advice directed to and received by Plaintiffs in Orange County, Florida; transmitted account reporting and correspondence to Plaintiffs in Orange County, Florida; debited its advisory fees from a Florida resident's account; and committed the tortious acts alleged in this Complaint within this State. The claims arise out of and relate to those contacts.

**D. Venue**

17. Venue lies in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this District: Plaintiffs reside in Orange County, the advice complained of was directed to and received by them there, and the account statements, portfolio reports and correspondence described below were transmitted to them there. This action is properly assigned to the Orlando Division, in which Orange County lies.

**E. Parallel Proceeding**

18. On or about September 14, 2026, Plaintiffs commenced an arbitration before FINRA Dispute Resolution Services, assigned Arbitration No. 26-02114, against Arkadios Capital, LLC and Arkadios Wealth Advisors LLC, asserting claims

arising from the conduct alleged in this Complaint. Arkadios Capital, LLC is a FINRA member firm and an affiliate of Arkadios Wealth under common control. *See* Exhibits A and B.

19. By notice dated September 16, 2026, FINRA Dispute Resolution Services advised Plaintiffs' counsel that Arkadios Wealth "is not a member over which FINRA maintains jurisdiction"; that "a signed post dispute agreement or court order is required to compel this party to FINRA arbitration"; and that in the absence of either, Arkadios Wealth "will be served on a voluntary basis." A copy of that notice is attached as Exhibit C.

20. Plaintiffs elected to serve Arkadios Wealth on a voluntary basis and, by letter of the same date, furnished its service address as 2827 Peachtree Road NE, Suite 510, Atlanta, Georgia 30305 — Arkadios Wealth's own principal office and place of business. A copy of that letter is attached as Exhibit D.

21. Arkadios Wealth declined to submit. By letter dated October 23, 2026, FINRA Dispute Resolution Services advised Plaintiffs' counsel: "we have not received a voluntary submission from Arkadios Wealth Advisors LLC, a named Respondent in this matter. Arkadios Wealth Advisors LLC is not compelled by the Code of Arbitration Procedure to arbitrate disputes with you in this forum. Accordingly, in the absence of such a voluntary submission, Arkadios Wealth Advisors LLC is no longer a party in this arbitration. If appropriate, you may pursue

your claims against Arkadios Wealth Advisors LLC in a forum of appropriate jurisdiction." A copy of that letter is attached as Exhibit E.

22. Plaintiffs bring this action in accordance with that direction. Arkadios Wealth was named as a respondent in the forum Plaintiffs first selected; it was identified by that forum as falling outside its compulsory jurisdiction; it was offered the opportunity to submit voluntarily at its own principal office; and it refused. The arbitration continues against Arkadios Capital, LLC and the other respondents named there, but not against Arkadios Wealth. No claim asserted here is duplicative of any recovery obtained in that proceeding, and Plaintiffs will credit any such recovery against any judgment entered in this action.

## IV. FACTS COMMON TO ALL COUNTS

### A. The Ivanescu Family and the Kalera Holding

23. Cristian Ivanescu was an engineer and entrepreneur and a founder of Kalera AS, a Norwegian vertical-farming business that later became Kalera PLC, an Irish public company whose shares traded on NASDAQ. He died on December 31, 2017, believing that his Kalera stock would provide for his wife, Ruth, and his daughter, Chloe.

24. Following his death, Ruth and Chloe together held 11,522,960 shares of Kalera AS — 6,773,746 held by Ruth and 4,749,214 held by Chloe. That holding

was substantially all of Plaintiffs' wealth. Neither Plaintiff had a pension, a business, or any other material source of income.

25. Plaintiffs' objective was the orderly diversification of that concentrated holding into a portfolio appropriate to their circumstances, so that the family's entire wealth would not remain dependent upon the fortunes of a single pre-revenue company. Neither Plaintiff ever instructed any adviser to maintain the concentration.

26. Sanchez became Plaintiffs' adviser in 2018, while registered with Raymond James. Over the ensuing years Plaintiffs' accounts passed, at his direction, through Raymond James, Insigneo Securities, LLC (clearing through Pershing LLC), Interactive Brokers LLC and Charles Schwab & Co., Inc.

27. Between February 24 and April 13, 2021 — before the Arkadios Wealth relationship began — approximately 2,070,126 Kalera shares were sold across Plaintiffs' accounts for approximately $9,554,115.58, at an average price of approximately $4.62 per share. Approximately 9,452,834 shares, or roughly 82% of the original position, were retained.

28. Those sales matter for one reason. They establish that the Kalera position was capable of being liquidated in volume, at prices between approximately $4.00 and $5.00 per share, and that Plaintiffs were willing to sell. When Arkadios Wealth assumed responsibility for these accounts, the question was never whether

the position could be sold. It was only whether anyone would recommend that it be sold. Arkadios Wealth never did.

**B. Sanchez's Record Before Arkadios Wealth Registered Him**

29. In August 2018, a customer arbitration was commenced against Sanchez alleging that he had over-concentrated customer accounts in unsuitable Puerto Rico municipal bonds, had made misrepresentations to customers, and had made unsuitable hold recommendations. That matter was settled on March 3, 2020. It was reported through the CRD system and appeared on Sanchez's BrokerCheck report. *See* Exhibit F at pp. 12–14.

30. On May 12, 2020, Raymond James discharged Sanchez. The Uniform Termination Notice for Securities Industry Registration (Form U5) filed by the firm states that he "violated the Firm's selling away and private securities transactions policies by attempting to facilitate a private securities transaction between Firm clients without the Firm's written approval and providing notice in a manner that did not follow the Firm's policy"; that he "failed to follow the Firm's directive to cease related activity during the internal investigation"; and that he "violated the Firm's gifts policy by attempting to effect the acceptance of a gift of the client's securities without Firm approval." The product type reported was Equity-OTC. The client whose securities were the subject of that attempted gift was Plaintiff Ruth Ivanescu. See Exhibit F at p. 15.

31. From May 12, 2020 until September 2021, Sanchez held no securities registration of any kind. He was not registered as a broker, as an investment adviser representative, or as an associated person of any registered firm.

32. On September 15, 2021, the Florida Office of Financial Regulation initiated an administrative proceeding against Sanchez, designated case number 108241-S, for rendering investment advice from a location within Florida without registration, in violation of section 517.12(4), Florida Statutes. *See* Exhibit F at pp. 8–11; Exhibit G.

**C. Arkadios Wealth Registered Sanchez, and Knew Exactly What It Was Registering**

33. In or about September 2021, Arkadios Wealth registered Sanchez as an investment adviser representative and held him out as a Financial Advisor of the firm.

34. Arkadios Wealth was required to review Sanchez's Form U4 and his CRD record before registering him. Both disclosed the August 2018 customer arbitration and the May 2020 Raymond James discharge and its stated grounds.

35. Arkadios Wealth also had actual knowledge of the pending Florida enforcement action because its own application for Sanchez's Florida registration was before the Office of Financial Regulation while that action was open and could not be granted without the Office's agreement. The Stipulation and Consent Agreement adopted by the Office's Final Order of March 30, 2022 states: "The

Office agrees to approve the pending applications for Nazario's registration with the Office as an associated person of Arkadios Wealth Advisors and as an associated person of Arkadios Capital, LLC., and upon receipt of the required administrative fine payment and entry of the Final Order adopting this Stipulation and Consent Agreement." *See* Exhibit G.

36. A reasonably prudent investment adviser registering a representative with that history would have imposed a plan of heightened supervision upon him. Upon information and belief, Arkadios Wealth adopted no heightened supervision plan for Sanchez, or adopted one and failed to implement it.

37. Arkadios Wealth never told Plaintiffs that another customer had brought a claim against Sanchez alleging over-concentration and unsuitable hold recommendations; that Sanchez had been discharged by Raymond James for attempting to accept a gift of Ruth's own securities; that he had held no registration of any kind for sixteen months; that a Florida regulator had charged him with rendering unregistered investment advice; or that a Final Order had been entered against him. Had Plaintiffs been told any of it, they would not have permitted their accounts to be managed by Arkadios Wealth, and certainly not by Sanchez.

**D. The Arkadios Wealth Advisory Relationship**

38. On January 26, 2022, Ruth signed a Crest Investment Advisory Agreement (the "Crest Agreement") naming Arkadios Wealth as adviser and

covering Charles Schwab account number XXXX-7057. A copy is attached as Exhibit H.

39. The Crest Agreement appoints Arkadios Wealth as investment adviser and provides that the "Adviser shall supervise and direct the investments for accounts owned by client, subject to the objectives, limitations and restrictions listed in the client's Investment Profile and Objectives," and that the Adviser "shall, at least annually, meet with Client to review Client's Investment Objectives." It grants Arkadios Wealth "complete and unlimited discretionary trading authorization" and appoints it "as agent and attorney-in-fact" for the account. *See* Exhibit H at p. 1.

40. Exhibit A to the Crest Agreement records an "Approximate Account Value" of $2,040,728 for account XXXX-7057 and an advisory fee of 1.5% of portfolio value, "billed monthly in advance" and "automatically deducted" from the account. Arkadios Wealth charged and collected that fee from January 2022 forward. *See* Exhibit H at pp. 10–11.

41. Arkadios Wealth reported on and directed activity in the account. Fixed income trade blotters for account XXXX-7057 dated April 25, 2023 and July 25, 2023 are headed "ARK – Ivanescu." Arkadios Wealth circulated to Plaintiffs its "Arkadios Managed Solutions Equity Strategy Summary" as of June 30, 2022.

42. Arkadios Wealth likewise serviced Chloe as an advisory client. It corresponded with her directly through its compliance department; on April 19, 2023

its compliance department wrote to her offering the Form ADV Part 2A brochure of Arkadios Wealth, *see* Exhibit I; it notified her of changes to its fee schedule and of the addition of a custodian; and it permitted its associated persons to advise her and to prepare and transmit portfolio reporting for her accounts on its behalf.

43. Chloe never signed a written advisory agreement with Arkadios Wealth. Plaintiffs have been unable to locate any such agreement, and upon information and belief none exists. The advisory relationship between Chloe and Arkadios Wealth arose from, and is evidenced by, the parties' course of conduct described above.

**E. Arkadios Wealth's Own Documents Recorded Both the Standard and the Breach**

44. On January 26, 2022 — the same day as the Crest Agreement, under the same PandaDoc document reference TASES-4KDR8-MZRTZ-GWADU, and as Exhibit B to that very agreement — Arkadios Wealth recorded an Investment Profile captioned "Suitability" for Ruth. *See* Exhibit H at p. 12. That document records that Ruth's general investment knowledge was "Limited"; that her liquidity or cash needs were "Less than 15%"; and that the box designating "Speculation" as an investment objective, and the box designating speculation as the purpose of the account, are both unmarked. It also records an investment time horizon of "Over 20 years," for a client then approaching seventy years of age. No supervisor questioned that coding.

45. Neither Plaintiff ever authorized, requested or consented to the concentration of her account in a single speculative micro-capitalization security. No document executed by either Plaintiff designates speculation as an objective or authorizes such a concentration.

46. Arkadios Wealth maintained a recommended model allocation for accounts of Plaintiffs' profile. On July 11, 2022, less than six months into the advisory relationship, Arkadios Wealth generated an Asset Allocation report for Chloe's account recording its own recommended allocation as 3.00% to "Small Growth" and 20.00% to "Investment Grade Bond." *See* Exhibit J.

47. The same day, De Jesús prepared and transmitted to Chloe a Holdings Gain/Loss report for her account. That report states that the account held 366,454 units of KALERA PLC at a cost basis of $57.24 per unit and $20,974,936.13 in the aggregate; that the position had a market value of $1,703,424.29; that the unrealized loss on the position was $(19,271,511.84); and that the position constituted 52.79% of the account. *See* Exhibit K.

48. The companion Asset Allocation report, prepared the same day, compared the account's actual allocation against Arkadios Wealth's own recommended model. It recorded "Small Growth" at 48.00% of the account against a recommended 3.00% — sixteen times the firm's own recommendation — and "Investment Grade Bond" at 2.43% against a recommended 20.00%. The report

priced the gap itself, directing that $1,617,514 be sold and $631,584 bought to bring the account back to the model. *See* Exhibit J.

49. The Stocks by Sector report, prepared the same day, lists Kalera as an "excluded holding." The sector analysis from which Kalera was removed totals $699,845.81 and equals 100.00%. The excluded position was therefore 2.43 times the size of the entire portfolio the firm analyzed. *See* Exhibit L.

50. Each of those three reports bears the footer "Version 10.3.706.44927 - Prepared on July 11, 2022 for Chloe Ivanescu by LUIS DE JESUS - Personal and Confidential." Arkadios Wealth thus knew, and recorded in writing on its own forms, that Plaintiffs' accounts departed radically from the allocation Arkadios Wealth itself recommended — and it recorded that fact by removing the offending position from the analysis rather than from the account.

**F. Arkadios Wealth Did Nothing**

51. Arkadios Wealth never recommended that Plaintiffs sell or reduce the Kalera position. It never prepared a written diversification plan. It never presented Plaintiffs with the alternative of reducing the position. Upon information and belief, it never escalated the concentration to a supervisor, a compliance officer or a committee, and no exception report, concentration alert or supervisory review of these accounts exists.

52. A reasonably prudent investment adviser presented with its own reporting showing a 52.79% single-security concentration in a pre-revenue micro-capitalization stock in the account of a client whose mother - a sixty-eight-year-old widow of limited investment knowledge with liquidity needs recorded at under 15% - held the same security would have intervened. Arkadios Wealth did not.

53. On November 8, 2022, Kalera PLC effected a one-for-one-hundred reverse stock split. In 2023, Kalera, Inc. sought protection under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-90290. Plaintiffs' retained shares became worthless.

## G. The August 2023 Annuity, the Municipal Bond Purchase and Sale, and the Concealed Compensation

54. On April 25 and July 25, 2023, municipal bonds were purchased in Ruth's Arkadios Wealth-supervised account at disclosed markups totaling $3,776.65.

55. On August 11, 2023, Sanchez prepared an American Equity IncomeShield 10 fixed indexed annuity illustration for Ruth in the amount of $3,035,000. On August 15, 2023, he prepared a second illustration in the amount of $2,500,000.

56. On August 15, 2023 — the same day as the second illustration — Ruth's equity and exchange-traded fund holdings were liquidated, including positions in NVIDIA ($104,069), Salesforce ($98,784), FIXD ($62,212), Advanced

Micro Devices ($60,335), Amazon ($55,174), JPMorgan Chase ($50,402), Meta Platforms ($45,458) and Apple ($40,004), generating taxable proceeds of not less than $774,000.

57. On August 24, 2023, the municipal bonds purchased weeks earlier in April and July were liquidated at prices below what Ruth had paid for them. The August 24, 2023 liquidation comprised thirty-one positions and generated proceeds of $639,613.65 and a realized loss of $(28,078.03), of which $(23,199.95) was realized on the very positions bought in April and July at the markups described above.

58. The proceeds of both liquidations were applied to purchase a $2,500,000 American Equity fixed indexed annuity at Sanchez's recommendation. Sanchez represented to Ruth that his compensation on the transaction would be approximately $20,000. Upon information and belief, his actual compensation was materially greater than the amount he disclosed. The true amount is within the knowledge of Arkadios Wealth and of the carrier and is not presently available to Plaintiffs.

59. Upon information and belief, funds from Chloe's account were commingled with Ruth's to fund the annuity, and an address other than Ruth's then-current address was recorded on the annuity paperwork, with the result that she did not receive communications from the carrier concerning her own funds.

60. When these facts became known, American Equity permitted rescission and returned the funds. The rescission did not make Plaintiffs whole. The securities liquidated to fund the annuity had been sold, the taxable gains on those sales had been realized, and the markups and transaction costs were not recovered.

61. A $2,500,000 fixed indexed annuity, funded by the wholesale liquidation of a diversified securities portfolio and by the purchase and immediate dumping of municipal bonds at a loss, sold to a sixty-nine-year-old customer on an undisclosed commission, is the paradigm of a transaction that supervision exists to catch. Arkadios Wealth caught nothing.

## H. Arkadios Wealth's Supervisory Failures

62. Arkadios Wealth failed to adopt and implement written policies and procedures reasonably designed to prevent violation of the Investment Advisers Act of 1940 and the rules thereunder, and failed to review annually their adequacy and effectiveness.

63. Specifically, and without limitation, Arkadios Wealth failed to:

(a) conduct adequate due diligence before registering a representative carrying three publicly reported disclosure events;

(b) impose or enforce heightened supervision upon that representative;

(c) maintain any effective concentration or suitability control over the accounts it supervised;

(d) review or act upon its own July 11, 2022 reporting showing a 52.79% single-security concentration and a sixteen-fold departure from its own recommended model;

(e) review the suitability of the August 2023 annuity recommendation or of the liquidations undertaken to fund it;

(f) verify the compensation representation made to the customer in connection with that annuity;

(g) detect the commingling of two customers' funds in a single annuity purchase; or

(h) detect the recording of an incorrect address on a customer's insurance paperwork.

64. The standard of care applicable to a registered investment adviser is informed by, among other sources, sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 and Rule 206(4)-7 thereunder; Regulation Best Interest, 17 C.F.R. § 240.15l-1; and FINRA Rules 2090, 2111, 3110 and 3120. Plaintiffs do not plead a private right of action under any of those provisions. They are pleaded as evidence of the standard of care to which Arkadios Wealth held itself out and by which its conduct is to be measured.

65. Arkadios Wealth's supervisory failures were a direct and proximate cause of Plaintiffs' losses. Had Arkadios Wealth supervised these accounts at even a rudimentary level, the concentration would have been reduced when its own reporting disclosed it in July 2022, and the August 2023 transactions would not have occurred.

**I. Termination, Concealment, and Delayed Discovery**

66. Sanchez's affiliation with Arkadios Wealth ended in or about April 2024. In a text message exchange with Ruth, Sanchez wrote: "Arkadios decided to cut ties with me in anticipation of a lawsuit that could name me." *See* Exhibit M. Arkadios Wealth severed the relationship two years after the Florida Final Order and four years after the Raymond James discharge — when litigation appeared imminent, not when the misconduct occurred.

67. Throughout the relationship Plaintiffs were not provided with account statements or transaction records except for periodic summaries. They had no independent source of the facts withheld from them.

68. Plaintiffs did not discover, and in the exercise of reasonable diligence could not have discovered, Arkadios Wealth's misconduct until on or about August 16, 2024, when Ruth obtained Sanchez's BrokerCheck report and assembled her own findings concerning his regulatory history. *See* Exhibit N. Ruth's earlier communications with De Jesús — including her electronic mail of February 22, 2024

observing that almost two million dollars had been lost under Sanchez's watch, *see* Exhibit O, and her further message of March 13, 2024, *see* Exhibit P — sought Arkadios Wealth's own explanation of the losses and reflect her continued trust in, and reliance upon, the firm and its representatives.

69. Plaintiffs did not know, and could not have known, of Sanchez's disciplinary history, of the prior customer arbitration, of the Florida Office of Financial Regulation proceeding and Final Order, of the extent of the concentration relative to Arkadios Wealth's own recommended model, or of the true amount of Sanchez's compensation on the annuity, until 2024. Arkadios Wealth's concealment of those facts prevented such discovery, and Arkadios Wealth is estopped from asserting any statute of limitations as a defense.

**J. Agency, Ratification, and the Benefit Received**

70. Arkadios Wealth held Sanchez and De Jesús out to Plaintiffs as its representatives; permitted them to use its name, its forms, its reporting templates and its correspondence; registered them on its Form ADV; routed its compliance correspondence to Plaintiffs over its own letterhead; and received the economic benefit of their activity in the form of advisory fees deducted directly from Plaintiffs' accounts. Arkadios Wealth is liable for their acts and omissions within the scope of that agency under the doctrine of respondeat superior and the principles of actual and

apparent authority, and it ratified their conduct by retaining its fees with knowledge of the facts recorded in its own reports.

### K. No Recovery Is Sought for the Period Before Arkadios Wealth's Duty Attached

71. Plaintiffs seek no damages from Arkadios Wealth for any decline in the value of the Kalera position occurring before September 2021, and do not seek recovery measured against the original cost basis of that position. The measure of loss pleaded here is the value of Plaintiffs' holdings at the time Arkadios Wealth's duty attached, less what was actually realized, adjusted for what a prudent adviser would have liquidated and over what schedule.

### L. Damages

72. As a direct and proximate result of the conduct alleged, Plaintiffs have been damaged in an amount not less than ten million dollars ($10,000,000.00). Plaintiffs' damages include, without limitation:

(a) the value destroyed in Plaintiffs' accounts after Arkadios Wealth's duty attached. On or about January 26, 2022, when Arkadios Wealth took the discretionary mandate, Plaintiffs' household portfolio was worth approximately $16,620,000. By the end of 2022 it was worth approximately $2,936,000. The recoverable portion of that destruction is the difference between what the accounts were worth and what they would have been

worth under a prudent program of orderly diversification commencing no later than January 2022, which Plaintiffs presently estimate to exceed $8,200,000;

(b) the losses sustained in the non-Kalera portions of the accounts during the Arkadios Wealth period, including approximately $1,031,770 in Ruth's account during 2022 and, upon information and belief, $(905,998.36) recorded in Arkadios Wealth's own weekly mark-to-market reporting for Chloe's account XXXX-9841 as of September 30, 2022;

(c) the losses and costs of the August 2023 sequence, comprising $3,776.65 in disclosed municipal bond markups, the $(23,199.95) realized on the sale of those same bonds below cost on August 24, 2023, and the tax cost of the August 15, 2023 liquidation of not less than $774,000 of appreciated securities;

(d) all advisory fees charged and collected by Arkadios Wealth on Plaintiffs' accounts from January 2022 forward, recoverable as restitution and, independently, under section 215(b) of the Investment Advisers Act of 1940;

(e) that portion of the federal tax penalties and interest assessed against Ruth that accrued after Arkadios Wealth's duty attached;

(f) prejudgment and post-judgment interest, costs, and attorneys' fees where provided by law; and

(g) punitive damages.

73. All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

74. Plaintiffs have retained the undersigned counsel and are obligated to pay a reasonable fee.

75. Plaintiffs plead their entitlement to punitive damages directly. The pleading requirement of section 768.72(1), Florida Statutes, is procedural and does not apply in an action in federal court.

## COUNT I — BREACH OF FIDUCIARY DUTY
***Both Plaintiffs***

76. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

77. Arkadios Wealth is a registered investment adviser. It held itself out as Plaintiffs' investment adviser, accepted discretionary authority over Ruth's account, serviced Chloe as an advisory client, and was compensated for doing so. Plaintiffs reposed trust and confidence in Arkadios Wealth, which it knowingly accepted. A fiduciary relationship existed between Arkadios Wealth and each Plaintiff.

78. As a fiduciary, Arkadios Wealth owed Plaintiffs the duties of loyalty and of care: to act in Plaintiffs' best interest; to know its clients; to recommend and to

maintain only holdings suitable to their recorded objectives and circumstances; to address a concentrated position inconsistent with those objectives; to make full and fair disclosure of all material facts, including the disciplinary and regulatory history of the representative it placed over their assets and the compensation its representatives earned; and to avoid and to disclose conflicts of interest.

79. Arkadios Wealth breached each of those duties, including by:

(a) leaving Plaintiffs' accounts concentrated in a single speculative micro-capitalization security in derogation of its own recommended allocation and of the Investment Profile it itself prepared;

(b) recording that departure in its own July 11, 2022 reports and taking no action upon it;

(c) failing to disclose Sanchez's discharge by Raymond James, the grounds stated on his Form U5, his sixteen-month absence of any registration, the prior customer arbitration, the Florida Office of Financial Regulation proceeding, and the Final Order of March 30, 2022;

(d) failing to disclose the true amount of the compensation earned on the August 2023 annuity;

(e) permitting the commingling of two customers' funds in a single annuity purchase; and

(f) collecting advisory fees throughout.

80. Arkadios Wealth is additionally liable for the breaches of fiduciary duty committed by Sanchez and De Jesús within the scope of their agency, as alleged in Part IV.J above.

81. Arkadios Wealth's breaches were a direct and proximate cause of Plaintiffs' damages. Its conduct was willful, wanton, and in reckless disregard of Plaintiffs' rights.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for compensatory damages, punitive damages, prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT II — NEGLIGENCE AND GROSS NEGLIGENCE

***Both Plaintiffs***

82. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

83. Arkadios Wealth owed Plaintiffs a duty to exercise the degree of care, skill and diligence that a reasonably prudent registered investment adviser would exercise in the same or similar circumstances in the management and oversight of a client's assets.

84. That duty arose independently of any contract, from Arkadios Wealth's undertaking to render investment advice and to exercise discretion over the property of others, and from the fiduciary relationship alleged in Count I.

85. Arkadios Wealth breached that duty in each of the respects alleged in Parts IV.E through IV.H above, including by maintaining no effective concentration or suitability control, by ignoring its own written reporting of a 52.79% concentration and a sixteen-fold departure from its own model, and by failing to review the August 2023 annuity recommendation or the liquidations that funded it.

86. The conduct alleged goes beyond ordinary negligence. Registering a representative with three publicly reported disclosure events and no heightened supervision, generating a report that removes a position from the analysis because it is too large, and then leaving that same position in the accounts of a sixty-eight-year-old widow and her daughter until it reached zero, constitutes a conscious and voluntary disregard of the need to use reasonable care, likely to cause and in fact causing grave injury. It was grossly negligent.

87. Arkadios Wealth's negligence and gross negligence were a direct and proximate cause of Plaintiffs' damages.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for compensatory damages, punitive damages, prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

**COUNT III — NEGLIGENT HIRING, RETENTION, AND SUPERVISION**
***Both Plaintiffs***

88. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

89. Arkadios Wealth owed Plaintiffs a duty to exercise reasonable care in the selection, registration, training, retention and supervision of the persons it placed in a position of trust over Plaintiffs' assets, and a duty to implement and enforce reasonable supervisory systems and procedures.

90. Arkadios Wealth breached that duty at the moment of hiring. In September 2021 it knew, or in the exercise of reasonable care should have known, of the August 2018 customer arbitration alleging over-concentration and unsuitable hold recommendations; of the May 12, 2020 Raymond James discharge and the grounds stated on the Form U5, which concerned the attempted acceptance of a gift of Ruth's own securities; of Sanchez's sixteen-month absence of any securities registration; and of the Florida enforcement proceeding then pending, of which it had actual knowledge through its own registration application.

91. Arkadios Wealth breached that duty again by retaining Sanchez after the Final Order of March 30, 2022, and by continuing to permit him to advise Plaintiffs for a further two years, through April 2024.

92. Arkadios Wealth breached that duty throughout by failing to supervise. It conducted no adequate review of Plaintiffs' accounts, maintained no adequate

concentration or suitability controls, imposed no heightened supervision upon a representative who plainly required it, and took no action notwithstanding that its own reporting recorded a 52.79% single-security concentration and a sixteen-fold departure from its own recommended allocation.

93. Sanchez and De Jesús were acting within the scope of their employment and agency with Arkadios Wealth, and Arkadios Wealth's negligence in hiring, retaining and supervising them was a direct and proximate cause of Plaintiffs' damages.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for compensatory damages, prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT IV — FRAUDULENT CONCEALMENT AND NONDISCLOSURE

***Both Plaintiffs***

94. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

95. Arkadios Wealth had a duty to disclose the facts set out below. That duty arose from the fiduciary and confidential relationship alleged in Count I; from Arkadios Wealth's superior and, in material part, exclusive knowledge of those facts; and from its own partial disclosures, which were rendered misleading by the facts withheld.

96. Arkadios Wealth concealed and failed to disclose the following material facts, each of which it knew:

(a) that on May 12, 2020 Raymond James had discharged Sanchez, and the grounds stated on the Form U5 — including that he had attempted to effect the acceptance of a gift of Ruth's own securities without firm approval. Arkadios Wealth knew this no later than September 2021, when it reviewed his Form U4 and CRD record in order to register him, and withheld it from Plaintiffs at all times thereafter;

(b) that Sanchez had held no securities registration of any kind between May 12, 2020 and September 2021. Arkadios Wealth knew this from the same records, at the same time, and withheld it;

(c) that in August 2018 a customer arbitration had been commenced against Sanchez alleging over-concentration and unsuitable hold recommendations — the same misconduct alleged here. Arkadios Wealth knew this from the same records, at the same time, and withheld it;

(d) that the Florida Office of Financial Regulation had charged Sanchez on September 15, 2021 with rendering investment

advice from Florida without registration, and that a Final Order was entered against him on March 30, 2022. Arkadios Wealth had actual knowledge of the proceeding because its own registration application for Sanchez was pending before that Office while the proceeding was open, and it withheld both the charge and the Final Order;

(e) that as of July 11, 2022 Plaintiffs' account held a single security at 52.79% of the account and at 48.00% of an asset class against Arkadios Wealth's own recommended allocation of 3.00%, and that Arkadios Wealth's own sector analysis had removed that security as an "excluded holding." Arkadios Wealth generated those three reports on that date and transmitted only the reports themselves, without disclosing to either Plaintiff what they meant or that its own model called for the position to be reduced by $1,617,514; and

(f) that the compensation earned on the August 2023 annuity was materially greater than the approximately $20,000 represented to Ruth on or about August 15, 2023.

97. Arkadios Wealth withheld those facts deliberately and with the intent that Plaintiffs would continue to entrust their accounts to it, would continue to pay its advisory fees, and would not discover its misconduct.

98. Plaintiffs did not know any of those facts and had no independent means of learning them. Their reliance upon the completeness of Arkadios Wealth's disclosures was justified: they had no financial or investment expertise, a fact Arkadios Wealth itself recorded on the Investment Profile it prepared, and they were entitled to rely upon the firm whose name appeared on their reporting.

99. Had the concealed facts been disclosed, Plaintiffs would not have permitted Arkadios Wealth or Sanchez to manage their accounts, would have directed the orderly liquidation and diversification of the Kalera position, and would have declined the annuity.

100. As a direct and proximate result of Arkadios Wealth's concealment, Plaintiffs have suffered damages. Its conduct was willful, wanton, and in reckless disregard of Plaintiffs' rights.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for compensatory damages, punitive damages, prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT V — NEGLIGENT MISREPRESENTATION

***Both Plaintiffs***

101. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

102. Arkadios Wealth, directly and through Sanchez and De Jesús, made the following representations of material fact to Plaintiffs: that Plaintiffs' accounts were being managed in accordance with the Investment Objectives recorded in the Investment Profile Arkadios Wealth prepared on January 26, 2022; that Arkadios Wealth was supervising the accounts and the persons it had placed over them; that the portfolio reporting it transmitted on July 11, 2022 and thereafter fairly presented the state of the accounts; and, on or about August 15, 2023, that the compensation on the annuity would be approximately $20,000.

103. Each of those representations was false. Arkadios Wealth either knew of their falsity or made them without knowledge of their truth or falsity, and in any event under circumstances in which it should have known them to be false, having generated the very documents that contradicted them.

104. Arkadios Wealth intended that Plaintiffs rely upon those representations, and Plaintiffs did rely upon them, justifiably and to their detriment.

105. Plaintiffs' reliance was a direct and proximate cause of their damages.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for compensatory damages, prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT VI — FLORIDA SECURITIES AND INVESTOR PROTECTION ACT

***Fla. Stat. §§ 517.301 and 517.211 — Both Plaintiffs***

106. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

107. Plaintiffs reside in Florida, the investment advice and recommendations at issue were directed to and received by them in Florida, and the transactions complained of were effected in and from Florida.

108. The instruments held and traded in Plaintiffs' accounts, including the Kalera shares, the exchange-traded funds, the municipal bonds and the equity securities described above, were securities within the meaning of chapter 517, Florida Statutes.

109. Section 517.301(1)(a), Florida Statutes, makes it unlawful for any person, in connection with the offer, sale or purchase of any investment or security, or in connection with the rendering of any investment advice, directly or indirectly to employ any device, scheme or artifice to defraud; to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon any person.

110. Arkadios Wealth, directly and through its associated persons, violated that section in connection with both the rendering of investment advice to Plaintiffs and the purchase and sale of securities in their accounts, by the untrue statements alleged in Counts IV and V and by the omissions of material fact alleged in Count IV, and by engaging in a course of business that operated as a fraud and deceit upon Plaintiffs.

111. Plaintiffs relied upon those untrue statements and upon the completeness of Arkadios Wealth's disclosures and were damaged thereby.

112. Arkadios Wealth is liable to Plaintiffs under section 517.211, Florida Statutes, including as the employer of, and through, the officers and agents who personally participated in and aided the transactions at issue, for damages or rescission, together with interest, court costs and reasonable attorneys' fees as provided by section 517.211(6).

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for damages or, in the alternative, rescission, together with prejudgment and post-judgment interest, court costs and reasonable attorneys' fees

pursuant to section 517.211(6), Florida Statutes, and such further relief as this Court deems just and proper.

## COUNT VII — BREACH OF CONTRACT

***Plaintiff Ruth E. Ivanescu — Pleaded in the Alternative***

113. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

114. This Count is pleaded in the alternative to Counts I through VI and VIII, pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

115. If the Crest Agreement was formed, Ruth and Arkadios Wealth were parties to a valid and enforceable contract.

116. Ruth performed every obligation required of her under that contract, including the payment of Arkadios Wealth's advisory fees, which were deducted automatically from her account monthly and in advance.

117. Arkadios Wealth breached the Crest Agreement in that it failed to "supervise and direct the investments for accounts owned by client, subject to the objectives, limitations and restrictions listed in the client's Investment Profile and Objectives," and failed to "at least annually, meet with Client to review Client's Investment Objectives." It left Ruth's account concentrated in a single speculative micro-capitalization security, at 48.00% of an asset class its own model recommended at 3.00%, for a client whose annexed Investment Profile recorded

limited investment knowledge, liquidity needs under fifteen percent, and no speculation objective.

118. Arkadios Wealth further breached the Crest Agreement by charging and collecting a 1.5% advisory fee, monthly and in advance, for advisory services it did not render in conformity with the agreement.

119. As a direct and proximate result of those breaches, Ruth has been damaged.

**WHEREFORE,** Plaintiff Ruth E. Ivanescu demands judgment against Arkadios Wealth Advisors LLC for compensatory damages, including restitution of all advisory fees paid, together with prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

**COUNT VIII — UNJUST ENRICHMENT**
***Both Plaintiffs — Pleaded in the Alternative***

120. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

121. This Count is pleaded in the alternative to Count VII, and in the event this Court determines that no enforceable contract governed the relationship between Arkadios Wealth and either Plaintiff.

122. Plaintiffs conferred a benefit upon Arkadios Wealth in the form of advisory fees charged against and deducted from their accounts from January 2022 forward, at the rate of 1.5% of portfolio value, billed monthly and in advance.

123. Arkadios Wealth had knowledge of that benefit, voluntarily accepted and retained it, and retained it with knowledge of the facts recorded in its own July 11, 2022 reports.

124. The circumstances render Arkadios Wealth's retention of those fees inequitable. Arkadios Wealth collected a fee for supervising and directing investments while supervising and directing nothing, and while its own contemporaneous reporting showed the accounts to be in gross derogation of the model it recommended.

125. Arkadios Wealth has been unjustly enriched in the amount of all fees so collected, together with interest.

**WHEREFORE,** Plaintiffs demand judgment against Arkadios Wealth Advisors LLC for restitution and disgorgement of all advisory fees charged and collected, together with prejudgment and post-judgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT IX — RESCISSION AND RESTITUTION OF ADVISORY FEES

***Investment Advisers Act of 1940 § 215(b), 15 U.S.C. § 80b-15(b) — Both Plaintiffs***

126. Plaintiffs reallege and incorporate paragraphs 1 through 75 as though fully set forth herein.

127. Arkadios Wealth is an investment adviser within the meaning of section 202(a)(11) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(11), and

was at all material times registered as such with the Securities and Exchange Commission.

128. Plaintiffs and Arkadios Wealth were parties to investment advisory contracts, written in the case of Ruth and, in the case of Chloe, oral or implied from the parties’ course of conduct.

129. The performance of those contracts involved violations of sections 206(1), 206(2) and 206(4) of that Act, 15 U.S.C. § 80b-6, and of Rule 206(4)-7 thereunder, 17 C.F.R. § 275.206(4)-7, in that Arkadios Wealth employed devices, schemes and artifices to defraud its clients; engaged in transactions, practices and courses of business which operated as a fraud and deceit upon its clients; failed to make full and fair disclosure of all material facts, including the regulatory history of the representative it placed over their assets and the compensation earned on the August 2023 annuity; and failed to adopt and implement written compliance policies and procedures reasonably designed to prevent violation of the Act, or to review their adequacy and effectiveness annually.

130. Under section 215(b) of that Act, 15 U.S.C. § 80b-15(b), a contract whose performance involves a violation of the Act is void as regards the rights of the violator. Plaintiffs are entitled to rescission of their advisory contracts with Arkadios Wealth and to restitution of all consideration paid under them. See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979).

131. The relief sought under this Count is limited to rescission and the restitution of consideration paid, and requires no showing of scienter, reliance or loss causation.

**WHEREFORE,** Plaintiffs demand that this Court declare their advisory contracts with Arkadios Wealth Advisors LLC void as regards the rights of Arkadios Wealth, order rescission of those contracts, order restitution of all consideration paid under them together with prejudgment interest, award costs, and grant such further relief as this Court deems just and proper.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs RUTH E. IVANESCU and CHLOE IVANESCU respectfully request that this Court enter judgment in their favor and against Defendant ARKADIOS WEALTH ADVISORS LLC, and:

A. Award Plaintiffs compensatory damages in an amount to be proven at trial, presently estimated at not less than ten million dollars ($10,000,000.00);

B. Award Plaintiffs punitive damages;

C. Declare the advisory contracts between Plaintiffs and Arkadios Wealth void as regards the rights of Arkadios Wealth, order their rescission, and order restitution and disgorgement of all advisory fees and other consideration paid;

D. Award Plaintiffs prejudgment and post-judgment interest at the applicable rates;

E. Award Plaintiffs their costs and reasonable attorneys' fees, including as provided by section 517.211(6), Florida Statutes; and

F. Grant such other and further relief as this Court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 3, 2026

**ZINOBER, DIANA & MONTEVERDE, P.A.**

/s/ Coren H. Stern
Coren H. Stern, Esq.
Florida Bar No. 644218
2400 E. Commercial Blvd., Suite 420
Fort Lauderdale, FL 33308
Telephone: 954.256.9288
Email: corey.stern@zdmlaw.com

**SCHWARTZ LEGAL, PLLC**

/s/ Jonathan C. Schwartz
Jonathan C. Schwartz, Esq.
Florida Bar No. 51540
8810 SW 8th Street
Plantation, FL 33324
Telephone: 954.648.1915
Email: jonathan@jcslegal.com

*Counsel for Plaintiffs*